# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDELITY & GUARANTY LIFE INSURANCE COMPANY, a Maryland Insurance Company,<br><br>                      Plaintiff,<br>vs.<br><br>JAMES ALBERTSON, an individual,<br><br>                      Defendant. | CASE NO. 07cv0045 BTM (LSP)<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |

Defendant has filed a motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons discussed below, Defendant's motion is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff Fidelity & Guaranty Life Insurance Company ("F&G") is an insurance company incorporated in Maryland. (Compl. at ¶ 3.) In July 2004, F&G issued a life insurance policy to Luis Plascencia ("Plascencia"). (Compl. at ¶ 14.) Under the terms of the policy, F&G would pay Defendant James Albertson ("Albertson"), the named beneficiary, the sum of $250,000 upon Plascencia's death. (Id.)

After Plascencia's death in December 2005, Albertson submitted a claim to F&G (Compl. at ¶ 16.) F&G asserts that while investigating the claim, it discovered that Plascencia's application for the policy included inaccurate, incomplete, and misleading responses to questions regarding Plascencia's criminal and medical history. (Compl. at ¶

1  18.)  F&G instituted this action on January 5, 2007, seeking declaratory relief and
2  rescission of the insurance contract under a two-year contestability clause.  (Compl. at ¶¶
3  28, 35.)   F&G contends that it would not have issued the policy had it known the true
4  facts of Plascencia's medical condition and his prior convictions.  (Compl. at ¶¶ 25, 32.)
5        On March 26, 2007, Albertson filed a motion to dismiss F&G's action for lack of
6  subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).
7
8  **II. DISCUSSION**
9        Albertson contends that F&G is actually a citizen of California and that, therefore,
10  diversity jurisdiction is lacking.  However, F&G has produced evidence establishing that it
11  is a citizen of Maryland only.  Therefore, diversity jurisdiction exists, and Albertson's
12  motion to dismiss is **DENIED**.
13        Federal courts have jurisdiction over all civil actions where there is complete
14  diversity of citizenship between the parties and the amount in controversy exceeds the
15  sum of $75,000.  See 28 U.S.C. § 1332(a).  Complete diversity requires that no defendant
16  have the same citizenship as any plaintiff.  Tosco Corp. v. Cmtys. for a Better Env't, 236
17  F.3d 495, 499 (9th Cir. 2000).  The burden of establishing subject matter jurisdiction is on
18  the party invoking jurisdiction.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S.
19  375, 377 (1994); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).
20        A corporation is deemed to be a citizen of any state in which it is incorporated, and
21  a citizen of the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).
22  Federal courts typically use one of two tests to determine the principal place of business
23  of a corporation.  Tosco, 236 F.3d at 500.  The "nerve center test" deems the
24  corporation's principal place of business to be the state in which the majority of its
25  executive and administrative functions are performed.  Id.  The "place of operations test"
26  deems the principal place of business to be the state which "contains a substantial
27  predominance of corporate operations."  Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d
28  1090, 1092 (9th Cir. 1990) (quoting Co-Efficient Energy Sys. v. CSL Indus., 812 F.2d 556,

558 (9th Cir. 1987)).

Under the "place of operations test," to determine whether a corporation's business activity "substantially predominates" in a given state, the Court must compare the corporation's business activity in the state at issue to its business activity in other states. Tosco, 236 F.3d at 500. Substantial predominance exists where the amount of a corporation's business activity in one state is significantly larger than in any other state in which the corporation conducts business. Id. Relevant factors to determining whether a particular state contains a substantial predominance of corporate activity include the locations of employees, tangible property, production activities, earned income, purchases, and sales. Industrial Tectonics, 912 F.2d at 1094 (finding that California was the principal place of business because California operations accounted for 61% of company sales and 69% of company income, and a majority of employees and equipment were located in California). The Ninth Circuit instructs that "where a majority of a corporation's business activity takes place in one state, that state is the corporation's principal place of business, even if the corporate headquarters are located in a different state." Industrial Tectonics, 912 F.2d at 1094. The "nerve center test" is used only when no state contains a substantial predominance of the corporation's business activities. Id.; see, e.g., Breitman v. May Co. of California, 37 F.3d 562, 564 (9th Cir. 1996) ("Because no one state contains a substantial predominance of the corporation's business activities, the place of operations test is inappropriate.").

As the party invoking federal court jurisdiction, F&G carries the burden of establishing diversity of citizenship. Kohler v. Inter-Tel Tech., 244 F.3d 1167, 1170 n.3 (9th Cir. 2001). Albertson, a citizen of California, maintains that F&G is also a citizen of California because F&G's California business activities "exceed[] or predominate[]" its business activities in all other states. Conversely, F&G contends that it is licensed to transact business in all states except New York and the District of Columbia, but no state contains the substantial predominance of its business activities. Accordingly, F&G argues, the proper test to be applied is the "nerve center test," under which F&G's

principal place of business is Baltimore, Maryland.  The Court agrees with F&G.

Applying the factors set forth in Industrial Tectonics, the Court finds that F&G has sustained its burden to show that its business activities do not substantially predominate in California.  F&G has no employees in California, and the majority of its employees are located in Baltimore, Maryland.  (Laws Decl. at ¶ 4.)  F&G also has no tangible property located in California, and the majority of its tangible property is in Maryland.  (Laws Decl. at ¶ 5.)  In 2005, F&G's income from California constituted 15.88% of F&G's total sales.  (Laws Decl. at ¶ 6.)  That same year, income from Florida sales was higher than any other state at 16.26%.  (Id.)  The next highest income-producing states were Michigan (7.54%), Texas (7.22%), Ohio (6.61%), Pennsylvania (6.08%), and New Jersey (5.78%).  (Id.)  In 2006, the income earned from California was higher than any other state at 15.28%, but it was followed closely by Florida at 11.28%.  (Laws Decl. at ¶ 7.)  The next highest incomes earned were from Texas (9.41%), Michigan (6.01%), Illinois (5.58%), New Jersey (5.42%), and Ohio (4.85%).  (Id.)  These income figures do not reflect a substantial predominance of business activities in California or in any one state.[1]  The amount of F&G's business in California is not "significantly larger" than any other state in which the corporation conducts business.  See, e.g., Ho v. Ikon Office Solutions, 143 F. Supp. 2d 1163, 1166-67 (N.D. Cal. 2001) (finding no substantial predominance in

---

[1] In calculating the percentages set forth above, for each state, F&G added income earned from life insurance premiums, annuity considerations, and deposit-type contract funds (amounts received for contracts without any mortality or morbidity risk).  F&G then took the total income of each individual state and divided it by F&G's *net* income (the total of all F&G business less reinsurance ceded).  An argument can be made that F&G's *gross* income should be used in making the calculations.  However, even if we were to base the states' percentages on gross income, the legal outcome would be the same.  Using gross income, in 2005, F&G earned 12.08% of its income from California, 12.09% from Florida, 5.73% from Michigan, 5.50% from Texas, 5.02% from Ohio, 4.91% from Pennsylvania, and 4.40% from New Jersey.  Based on gross income, in 2006, F&G earned 13.77% of its income from California, 10.16% from Florida, 8.48% from Texas, 6.73% from Pennsylvania, 5.42% from Michigan, 5.03% from Illinois, and 4.89% from New Jersey.  According to these figures, F&G's business activities do not substantially predominate in California or in any other state.
    Albertson's income calculations are erroneous because Albertson omitted income from deposit-type contract funds when determining each state's income.  Albertson also provides separate calculations based on life insurance premiums only.  However, for purposes of examining the amount of business F&G conducts in the various states, all sales, not just sales of life insurance policies, are pertinent.

1  California where California business activities generated 7.9% of company's revenue,
2  Texas and Florida generated 5.4% and 5.3%, respectively, and remaining revenue was
3  widely distributed among many states); <u>Kuebler v. Allstate Ins. Co.</u>, No. CV-98-2667 JMI
4  JGX, 1998 WL 596733, at *2 (C.D. Cal. July 9, 1998) (concluding there was no
5  substantial predominance in any state where company transacted business in all states,
6  California was largest source of income at 13%, second largest source was only two
7  percent lower, and company derived substantial income from two other states).
8       Because F&G's business activities do not substantially predominate in any one
9  state, the "nerve center test" is the proper test to apply. All of F&G's executive and
10 administrative functions take place in Baltimore, Maryland, and it its headquarters are
11 located in Baltimore, Maryland. (Laws Decl. at ¶ 3.) Albertson does not dispute these
12 facts. Therefore, F&G's principal place of business under the "nerve center test" is
13 Maryland.
14      Because F&G is a citizen of Maryland and Albertson is a citizen of California, the
15 parties are diverse and this action is properly before the Court based upon federal
16 diversity jurisdiction under 28 U.S.C. § 1332(a).[2]
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///

---

[2] Albertson also argues that F&G has failed to establish that venue is proper in this district. Albertson argues that F&G has failed to allege facts showing the residence of Plascencia, and points out that, in Paragraph 2 of the Complaint, the Western Division of Central District of California is listed as the proper venue. However, it is apparent that the reference in the Complaint to the Central District of California was an inadvertent mistake. Furthermore, venue is proper in this district because Albertson, the defendant in this action, resides in San Diego, and a substantial part of the events giving rise to F&G's claims (i.e., the solicitation of, application for, and delivery of the life insurance policy) occurred in San Diego. <u>See</u> 28 U.S.C. § 1391(a).

### III. <u>CONCLUSION</u>

For the reasons discussed above, Albertson's motion to dismiss is **DENIED**.

DATED:  June 20, 2007

*/s/ Barry Ted Moskowitz*

Hon. Barry Ted Moskowitz
United States District Judge